## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH RABINOWITZ, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>AMERICAN WATER RESOURCES, LLC,<br><br>    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1.      Plaintiff Joseph Rabinowitz ("Plaintiff"), by and through his undersigned counsel, brings this lawsuit on behalf of himself and all others similarly situated against American Water Resources, LLC ("AWR"). Plaintiff alleges as follows based on personal knowledge concerning all facts related to himself, and on information and belief concerning all other matters:

### NATURE OF THE ACTION

2.      This case arises from AWR's pattern and practice of wrongly denying homeowner claims for the payment of covered repairs to exterior water and sewer lines pursuant to the terms and conditions of AWR's uniform water and sewer service line protection program agreements (the "Line Protection Agreements").

3.      Homeowners are generally responsible for repairs to water and sewer lines that run from their home's exterior to the main lines in the street. Many homeowners are unprepared for the often high cost of repairs to water and sewer lines that are, in general, not covered by their insurance policies.

4.      To alleviate this serious issue, in January 2013, the New York Department of Environmental Protection ("NYCDEP") introduced the Water and Sewer line protection

1

programs for NYCDEP customers and selected AWR as the exclusive service line protection provider for over 670,000 eligible New York City properties.

5.      In addition to participating New York City homeowners, AWR provides water and sewer line protection to hundreds of thousands of homeowners throughout the United States, either directly or through programs similar to the line protection programs offered by NYCDEP. For instance, in Nashville, Tennessee, AWR provides substantially similar water and sewer line protection to an estimated 143,000 residential customers through a water and sewer line protection program in partnership with Nashville Metro Water Services.

6.      AWR claims that "[f]or over a decade, [it] has helped customers protect themselves against unexpected repair costs with affordable protection for service line emergencies[,]"and that it "strives to provide hassle-free repairs, exceptional customer service, professional local contractors, and peace of mind" to 1.7 million service contract customers across the country.[1] Prior to entering into Line Protection Agreements, AWR assures customers, like Plaintiff, that enrolling in protection programs will take the responsibility of paying for service line repairs off of their shoulders.

7.      In reality, AWR regularly denies covered claims for the payment of repairs without cause and in violation of the terms and conditions of its Line Protection Agreements. By violating its contractual duties, AWR is able to enrich itself at the expense of line protection program participants who have dutifully paid their premiums and rightly expect coverage. Plaintiff was one of many homeowners whose claim AWR denied despite the need for repairs to water and sewer lines resulting from damage covered under the Line Protection Agreements.

8.      Based on AWR's unlawful conduct, Plaintiff brings this action on behalf of

---

[1] https://awrusa.com/about-us.

himself and other similarly situated homeowners across the United States. Plaintiff alleges claims for (1) breach of contract; (2) a breach of the implied covenant and good faith and fair dealing; (3) violation of the New Jersey Consumer Fraud Act ("NJFCA"); and/or (4) New York General Business Law § 349 ("NYGBL § 349"). Plaintiff seeks permanent injunctive relief, as well as damages caused by AWR's practices.

## THE PARTIES

9.    Plaintiff Joseph Rabinowitz resides and owns a home in Brooklyn, New York. In or about February 2013, Plaintiff enrolled in both the water and sewer line protection programs pursuant to the terms and conditions of the Line Protection Agreements.

10.    Defendant American Water Resources, LLC is a limited liability company organized under Virginia law, with its principal place of business located at 1025 Laurel Oak Road, Voorhees, New Jersey 08043. Upon information and belief, Defendant's sole member is American Water Works Company, a publicly traded Delaware corporation, with its principal place of business located at 1025 Laurel Oak Road, Voorhees, New Jersey 08043.

11.    Upon information and belief, AWR, through its management, employees, and agents, directs and manages the promotion and provision of the Line Protection Agreements through its New Jersey headquarters.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Minimal diversity exists between members of the class (defined below) and the defendant: AWR is a citizen of New Jersey, and Plaintiff is a citizen of New York. The amount in controversy in this action exceeds $5,000,000 and there are more than 100 members in the class.

13.    This Court has personal jurisdiction over this case because New Jersey is AWR's principal place of business. Alternatively, AWR is engaged in systematic and continuous business activity in New Jersey, has sufficient minimum contacts in New Jersey, or otherwise intentionally avails itself of the New Jersey consumer market, including through promoting, marketing, and enrolling New Jersey homeowners in line protection programs from its New Jersey headquarters. Those actions render the Court's exercise of jurisdiction over AWR appropriate under traditional notions of fair play and substantial justice.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391. A substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this District, and AWR regularly conducts business and is subject to personal jurisdiction in this District.

15.    All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

### A.    The Line Protection Programs and Services

16.    Generally, homeowners are responsible for the water and sewer service lines that run from the exterior of their homes to the municipal service lines in the street. Among other things, aging pipes, invasive tree roots, and even seasonal changes can cause a break or blockage to exterior water and sewer lines.

17.    The cost of repairing a broken service line can amount to thousands of dollars. On average, it costs homeowners between $3,000 and $5,000 to repair a water line break and between $10,000 and $15,000 to repair a sewer line break. Most homeowners are unaware of their responsibilities regarding exterior water and sewer lines, and to make matters worse, homeowners faced with the substantial cost of repairs often find their homeowner's insurance

will not cover the damage.

18.     To address this problem, NYCDEP established the line protection programs in January 2013 and partnered with AWR to administer and provide services to participants pursuant to the terms and conditions of the Line Protection Agreements. Beginning in 2013, NYCDEP mailed letters to its customers describing the line protection programs and instructions for enrollment. *See* Letter to Plaintiff from NYCDEP, attached as **Exhibit A.**

19.     NYCDEP encouraged homeowners to enroll in the programs by citing AWR's supposed decade-long history as one of the country's "leading water and sewer service line protection providers." *Id.* NYDEP further touted AWR's protection of "nearly one million service lines" across the country and its "attention to customer service" as reasons to enroll in the line protection programs. *Id.* Due to its partnership with NYCDEP, AWR is the exclusive provider of exterior water and sewer line protection for approximately 670,000 eligible properties throughout New York City.

20.     NYCDEP is not alone. AWR has partnered with regional utility companies to provide line protection to homeowners across the United States. Among other areas, AWR is the exclusive line service protection provider in Nashville, Tennessee; Houston, Texas; Burlington, Iowa; and Orlando, Florida. In addition to its exclusive arrangements in those cities, AWR offers services and enters into Line Protection Agreements directly with consumers in 35 states. In total, AWR provides line protection services to more than 1.4 million consumers across the country.

21.     Homeowners are promised a wide-range of benefits before enrolling in the line protection programs, including: (1) unlimited protection for covered water and sewer line repairs caused by normal wear and usage; (2) rapid response in emergencies; (3) a 1-year warranty on all

repairs; and (4) "peace of mind protection from unexpected repairs." *Id.* The cost of the line protection (around $12-14 per month for both water and sewer lines) is added directly to participants' monthly water and sewer bills. *Id.*

22.    Consumers often enter into Line Protection Agreements based on solicitation materials making lofty representations, but are not offered a chance to review the relevant Line Protection Agreements before enrolling. For example, NYCDEP instructed customers to enroll in the line protection programs by completing and returning an enclosed form, but because no copies of the Line Protection Agreements were included with the materials, potential participants could have no way of determining the true extent of AWR's coverage or the particulars of AWR's exclusions. *See* Exhibit A.

**B.    The Line Protection Agreements**

23.    AWR provides line protection pursuant to the terms and conditions of the Line Protection Agreements. The Line Protection Agreements contain uniform language for the policy provisions at issue. *See* Line Protection Agreements, attached as **Exhibit B** and **Exhibit C**.[2]

27.    The Line Protection Agreements generally protect water lines from the connection with the municipalities' system to the water meter or main shut-off valve inside the home, and sewer lines from the exterior wall of a home to the point where it connects to (i) a municipalities' main or (ii) a septic tank. *See* Exhibit B at ¶ 5, Exhibit C at ¶ 5, "What Lines or Systems Are Protected?"

28.    Homeowners are protected as long as (1) they own the home, (2) the home is occupied, and (3) the homeowner has ownership responsibility for the home's water or sewer

---

[2] Line Protection Agreements generally come in two forms: one agreement covers water lines and the other covers sewer lines. The policies contain substantially similar provisions in New York and throughout the United States.

line. Exhibit B at ¶ 4, Exhibit C at ¶ 4, "What Homes Are Protected?"

29.    For water lines, AWR agrees to "pay to repair for leaks or breaks . . . if they: (1) occurred on or after the Effective Date; and (2) resulted from normal wear and usage." Exhibit B at ¶ 6, "What Repairs Are Covered?" For sewer lines, AWR agrees to "pay to repair breaks, clogs or blockages of [the] Sewer Lines if they: (1) occurred on or after the Effective Date; and (2) resulted from normal wear and usage." Exhibit C at ¶ 6, "What Repairs Are Covered?" Among other exceptions, the Line Protection Agreements do not cover damage to pipes located inside the home, or damage caused by the homeowner or third-parties and "natural acts or disasters, such as earthquakes, floods, hurricanes, or landslides." *See* Exhibit B at ¶ 7, Exhibit C at ¶ 7, "What Repairs Are Not Covered.".

30.    To report an issue with water and sewer lines, Line Protection Plan participants are told to phone AWR's toll-free line or to contact their regional utility company. AWR will then dispatch an independent contractor who will begin work on the damaged water or sewer line after obtaining any necessary permits. *See* Exhibit B at ¶ 9; Exhibit C at ¶ 9, "How Can You Get Service?"

31.    The Line Protection Agreements sometimes cap coverage per occurrence, but in other instances, "[t]here is no limit on the amount that AWR will pay for covered repairs[.]" *See* Exhibit B at ¶ 8, Exhibit C at ¶ 8, "What Is Your Protection Limit?"

32.    To evade insurance regulations and oversight by state insurance regulators, the Line Protection Agreements scrupulously avoid using the word "insurance" and, in some instances, expressly state that the Line Protection Agreements are not insurance contracts. *See* Exhibit B at ¶ 1, Exhibit C at ¶ 1, "What Is This Agreement?"

C.    **AWR Refused to Pay for A Covered Repair to Plaintiff's Exterior Sewer Line**

33.    Recently, AWR refused to pay for a covered repair to Plaintiff's sewer lines resulting from "normal wear and usage."

34.    Plaintiff owns and occupies a home in Brooklyn, and has ownership responsibility over the exterior water and sewer lines attached to NYCDEP's main line.

35.    In February 2013, Plaintiff enrolled in the line protection programs, and since that time, his water and sewer pipes have been protected by the Line Protection Agreements. Plaintiff has paid the required costs for the line protection programs as a component of his monthly NYCDEP water and sewer bill from enrollment, and has paid approximately $150 per year to participate in the line protection programs.

36.    In February 2018, Plaintiff contacted AWR concerning a sewer leak in his home. AWR claimed any damage to the sewer line inside of the home was not covered under the Line Protection Agreements. Plaintiff then hired a plumber who, in order to repair the interior line, had to open the exterior wall to find a good piece of pipe to make a new connection. In doing so he found that the exterior portion of the sewer line was broken, clogged, or blocked due to extensive rotting, erosion, cracking, and other damage. Plaintiff's plumber implemented temporary measures to keep the sewer line functioning pending a permanent solution.

37.    From February to March 2018, Plaintiff repeatedly contacted AWR concerning repairs to his exterior sewer line, that is, the portion of the sewer line the Line Protection Agreements oblige AWR to pay to repair. Despite its broad duty under the Line Protection Agreements to dispatch an independent contractor to a home when there is a break, clog, or blockage of the sewer line, AWR refused to do so citing nonexistent exceptions, including that it would only dispatch an independent contractor where there is an active backup or where there is

a crack to the bottom of the line (as opposed to the top). AWR also informed Plaintiff it would not dispatch an independent contractor to a home based on the recommendation of a third-party, even though the Line Protection Agreements contain no provision to that effect.

38.    AWR eventually dispatched an independent contractor to Plaintiff's home, but after the independent contractor inspected the sewer line, AWR denied Plaintiff's claim in late March 2018. AWR baselessly asserted that the repair was not covered because Plaintiff's privately-hired plumber had purportedly caused the damage even though the substantial deterioration and cracking of the exterior sewer line could not have been caused by Plaintiff or a third-party.

39.    Defendant violated its obligations under the Line Protection Agreements by delaying to dispatch an independent contractor and ultimately denying Plaintiff's claim for coverage of repairs to his exterior sewer lines. The break, clog, or blockage of Plaintiff's exterior sewer line occurred after Plaintiff enrolled in the line protection programs and resulted from normal wear and usage in the form of extensive rot, erosion, cracking, and other damage. Contrary to AWR's representations, that damage could not have been caused by the one-time, temporary repair of the in-home portion of Plaintiff's sewer line, and AWR was obligated to pay for the cost of repairs.

40.    Plaintiff's exterior sewer line remains broken, blocked, or clogged, and he is currently considering various contractors to undertake the costly repair that was wrongly denied by AWR.

**D.    AWR's Pattern and Practice of Wrongly Denying Payment for Covered Repairs to Water and Sewer Lines**

41.    Plaintiff is one of many line protection program participants whose repair claims were wrongly denied by AWR through deceptive reference to inapplicable or nonexistent

exceptions to coverage. For years, AWR's misleading practices have been the subject of homeowner complaints and news articles concerning water and sewer line protection programs throughout the country.

42.    For example, in one news article, a New Jersey participant in AWR's plan described how AWR refused to pay for a covered repair to a sewer line due to the dubious existence of a "belly" or dip in the line.[3] However, the Line Protection Agreement at issue did not exclude payment for repairs based on that reason. As outlined in consumer complaints on RipoffReport.com, AWR denied an Illinois consumer coverage for the same reason, telling the affected consumer that "a belly isn't a blockage so its [sic] not covered."[4]

43.    In another news article, a New York line protection program participant from Whitestone, Queens described being denied a proper inspection and coverage of a break in her exterior sewer line after AWR supposedly determined that the break was the result of a preexisting problem. AWR made this determination even though it did not perform a camera inspection of the sewer line or inspect the lines prior to the homeowner entering the line protection program.[5]

44.    Other participants in AWR's line protection programs have complained that AWR refused to repair breaks and other damage to water and sewer lines by citing non-existent or inapplicable exclusions. One participant stated: "[t]he reasons we added this expense of $14 …

---

[3] Bamboozled: Two sewage leaks and nearly two weeks without coverage after dispute over sewer line coverage, *available at* http://www.nj.com/business/index.ssf/2014/06/bamboozled_two_sewage_leaks_and_nearly_two_weeks_without_water_after_dispute_over_sewer_line_coverag.html.

[4] https://www.ripoffreport.com/reports/american-water-rescources/alton-illinois/american-water-rescources-insurance-for-your-water-and-sewer-lines-this-is-a-joke-they-d-437782.

[5] Insurance Refuses To Cover Sewer Line, *available at* http://queenstribune.com/insurance-refuses-to-cover-broken-sewer-line/.

per month was to cover a catastrophic an [sic] expensive event as a break in the sewer line caused by tree roots and age. We had no idea this Insurance did not cover breakage of the sewer line going to the Main sewer in the street . . . . When I contacted [AWR] to tell them of the problem, they flatly told me they do not cover a break in the sewer line. On the bill I receive each month it clearly states water/sewer line protection. I am scratching my head saying 'what the heck have I been paying for all this time?'"[6]

45.    Another participant reported to AWR a suspected break in a sewer line but AWR "refused to send somebody out because the insurance only covers stoppages or blocks in the line." The consumer added: "[s]o many people think that they are covered and it seems all the protection covers is for someone to come out and snake your line . . . not worth it to me. I ended up calling and cancelling the coverage and the rep asked why am I cancelling so I told him and then he said we cover breaks. I tried again to get reimbursement but still no luck."[7]

46.    These complaints are by no means isolated. Instead, numerous complaints from various sources confirm AWR's widespread practice of denying coverage without proper inspection and/or by disingenuously referring to vague or phantom exclusions:

a)    "I contacted a local plumber for diagnosis and estimate. The plumber snaked the drain and told me we have a broken pipe and gave an estimate of nearly $4,000 . . . . My wife reminded we [sic] of this coverage we had with [AWR], so I called them. Because I already called someone other than them, they would not even send someone out, even though we did not have the work done. Upset I told them to cancel my account, but they did not and kept billing me."[8]

---

[6] https://www.ripoffreport.com/reports/american-water-resources/pittsburg-pennsylvania-15250/american-water-resources-amp-new-jersey-american-water-company-who-offers-this-insuranc-1107745.

[7] https://www.ripoffreport.com/reports/american-water-resources/alton-illinois-62002/american-water-resources-nj-american-water-had-sewer-line-protection-and-the-sewer-line-b-1381706.

[8] https://www.ripoffreport.com/reports/american-water-resources/voorhees-new-jersey/american-water-resources-company-does-not-pay-claims-voorhees-new-jersey-1180530.

b)  "[AWR] has a contract with me to maintain and repair my sewer line. When I had a severe sewer line clog they refused service from a long distance, without looking at it and told me it wasn't their problem. It was, and it cost me $1700.00 to fix with a private plumber. So American Resources keeps my monthly premiums but refuses to honor their contract. They must be laughing all the way to the bank because I hear that's just one of their scams."[9]

c)  "Called [AWR] and reported I had a leak in my sewer line. They told me one of there [sic] reps would contact me. Two days later I received a call. They told me that sewer line leaks were not covered. I told them the leak was due to a clog in the exterior sewer line. They said that I reported a leak and a clog so I was not covered. I said what if the exterior sewer line is collapsed. She said it was not covered. Only thing that is covered is clogs. This service does not cover anything. Bad service do not get it."[10]

d)  "I was foolish enough to sign up and was rejected after reporting a sewer line blockage. They sent a plumber to my house and quickly determined that the problem was 'pre-existing,' not sure how they were able to determine nor did I get a formal response. After weeks of follow up they sent another plumber to my house who told me 'the pipe is back pitched' which [AWR] does not cover. So I spent almost $100 dollars and received absolutely nothing."[11]

e)  "We contact [AWR] seen we had a sewage back up in October. They sent their plumber who said there was a break in the pipe but saw a long item they determined was a broken snake therefore contract is null & void. We called another plumber and were charged $1500 to find out it wasn't a snake but a tree root. Call [AWR]—send them videos and they will review. Fast forward to December 23 & have another backup. Pipe is officially collapsed & we are to gave [sic] people over for Christmas Eve. Call [AWR]—still no response they are still reviewing. We cannot get any supervisors on the phone. Well, we replaced our pipe at a cost of $10,500. We have tried calling [AWR] again, but apparently the unprofessional idiot who is handling our case had an unexpected emergency right after we were told he was in."[12]

---

[9] https://www.ripoffreport.com/reports/american-water-resources/nationwide/american-water-resources-water-water-everywhere-alkton-illinois-nationwide-1296027.

[10] https://www.ripoffreport.com/reports/american-water-resources/nationwide/american-water-resources-reported-a-leak-in-my-sewer-line-they-said-it-was-not-a-clog-o-1346963.

[11] https://pardonmeforasking.blogspot.com/2013/02/water-and-sewer-service-line-protection.html.

[12] *Id.*

f)    "I got this insurance foolishly thinking I was protected. On Memorial Day, I had a clog in my sewer pipe stating they covered leaks and clogs so I called again and the woman I talked to said they should have sent someone over to look at it at least. She said send a copy of the bill from the plumber with a description of why the leak occurred and a copy of the check I paid with and they might cover it. It has been 5 weeks and yesterday I was told there are 14 people ahead of my case. I have NO faith in this company I think it is a total scam and I will NOT renew my contract with them or ever recommend them."

g)    "This company is the largest perpetrator of a shell game I have ever seen. Do not waste your money on Water & Sewer Line Protection. It is a scam and this company should NOT be in business. They collect $12.25 a month for Sewer Line Protection. According to their website, sewer line protection is to repair or replace broken sewer lines. After they dug a hole in my ex-wifes lawn, and she was without sewer "usage" for 8 days, they told her they were not going to hook her sewer line back up, that the service was to just clear a blockage. This after they had cut her sewer line and capped it, 7 feet away from the main. They are liars, they are con artists and they are not to be trusted. Essentially, what I discovered was the repair was going to be more expensive to fix than they had hoped for and walked away. Fortunately, ** ******** ***** was kind enough to come do the work. It took them 2 hours, ***** ****** AWR's 'contractor' spent 5 hours digging a hole and essentially doing nothing. Both companies are useless. Please do not waste whatever they charge for Sewer Line Protection, as you are not protected for much of anything."[13]

h)    "I have been paying over 20.00 per month for sewer and water line protection for my home and when I finally need to use it they don't cover it. This is a scam. They do NOT pay for anything. I'm looking into filing a class action over this contact me if interested."[14]

47.    The complaints—coming from participants of AWR's line protection programs across the country—show AWR's pervasive non-compliance with the terms and conditions of the Line Protection Agreements. Worse yet, AWR attempts to justify its contractual violations by falsely or misleadingly citing inapplicable, vague, or non-existent coverage exceptions. In some instances, AWR even denies coverage without properly inspecting water or sewer lines to

---

[13]    https://www.bbb.org/new-jersey/business-reviews/water-and-sewer-line-protection/american-water-resources-llc-in-voorhees-nj-27001589/reviews-and-complaints.

[14]    https://www.yelp.com/biz/american-water-voorhees.

determine the type or cause of the damage. Because AWR is often the exclusive provider of the line protection in the relevant areas, homeowners cannot seek protection from AWR's competitors and have no other recourse but to pay out-of-pocket for covered repairs.

48.    Upon information and belief, and based upon numerous complaints from AWR customers throughout the country, AWR (a) denies claims for the payment of covered repairs as a matter of course; (b) maintains internal procedures aimed at deflecting its contractual obligations through reliance on vague, inapplicable, or non-existent exclusions to coverage; (c) fails to engage in the inspection and diligence required by the Line Protection Agreements, and (d) undertakes minimal and insufficient repairs even in instances where it has determined damage to exterior water and sewer lines is covered under the Line Protection Agreements.

49.    As a result of its misconduct, AWR has been able to increase its bottom line by collecting the costs paid by customers while wrongly withholding coverage to customers whose claims properly fall under the Line Protection Agreements. In the aggregate, AWR's customers have had to pay millions of dollars to participate in line protection programs and for repairs that should have been covered by AWR.

**E.    Attorneys General Throughout the Country Have Settled Enforcement Actions Against AWR's Competitor Based on Similar Allegations**

50.    From 2015 to 2016, Connecticut-based HomeServe USA, one of the country's leading providers of sewer and water line protection, faced allegations similar to those made in this lawsuit and settled claims with state regulators from six states—New York, Georgia, Kentucky, Ohio, Maryland, and Massachusetts. The HomeServe cases strongly suggest industry-wide practices aimed at increasing participation through misleading advertising and denying coverage when participants need it most.

51.    On November 13, 2015, the Office of the New York Attorney General announced

14

a settlement with HomeServe relating to the marketing of contracts purportedly protecting residential homeowners' external water, sewer, and electrical lines.[15] Among other things, the Attorney General alleged that the company failed to disclose certain exclusions and eligibility requirements, including for example, that multi-family homes or those in excess of 5,000 square feet were not eligible for certain types of coverage.

52.    HomeServe agreed to pay $100,000 for restitution, penalties and costs and establish a $100,000 fund, which was to be used to provide free exterior water service line repairs to low-income New Yorkers. HomeServe also agreed to disclose material terms, exclusions, and eligibility requirements of its service plans.

53.    Similarly, between 2010 and 2015, HomeServe signed agreements with attorneys general or similar government officials amid investigations into the firm's marketing materials, including materials stating "any" or "all" pipe problems would be covered, even though the plans contained numerous exclusions.[16]

54.    Similar to HomeServe, AWR enticed line protection program customers to enter into contracts by promising "peace of mind protection from unexpected repair costs," "[u]nlimited protection for water and sewer line repairs caused by normal wear and usage," and "attention to customer service[.]" *See* Exhibit A. Instead of adhering to those promises, AWR took every opportunity to avoid or delay its contractual obligations and deprive line protection

---

[15] A.G. Schneiderman Announces Settlement With Company That Deceptively Solicited Consumer To Enroll In Service Plans, *available at* https://ag.ny.gov/press-release/ag-schneiderman-announces-settlement-company-deceptively-solicited-consumers-enroll.

[16] Maryland water utility partners with company accused of misleading customers, The Washington Post, September 10, 2016, *available at* https://www.washingtonpost.com/local/maryland-water-utility-partners-with-company-accused-of-misleading-customers/2016/09/10/2ef4777c-705c-11e6-8365-b19e428a975e_story.html?utm_term=.56c6b5e247ac.

customers of rightful coverage, including by misleadingly citing or fabricating exclusions to the Line Protection Agreements.

55.    This action seeks to enjoin AWR's unlawful practices and compensate line protection customers for their losses, including returning previously paid costs to participate in the programs and money spent out-of-pocket to pay for covered repairs.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff seeks certification of the following class:

> All AWR line protection customers in the United States who were denied payment for covered repairs to their water and sewer lines by AWR pursuant to the terms and conditions of the Line Protection Agreements during the applicable statute of limitations.

> The class excludes any judge or magistrate assigned to this case, AWR and any entity in which AWR has a controlling interest, and AWR's officer, directors, legal representatives, successors, and assigns.

57.    There are hundreds, if not thousands, of class members. Accordingly, the class consists of hundreds, if not thousands, of line protection customers and is thus so numerous that joinder of all members is impracticable. Although the exact number of members is unknown to Plaintiff at this time, the identities and addresses of the class members can be readily determined from business records maintained by AWR.

58.    Plaintiff's claims are typical of those belonging to class members. Plaintiff's claims stem from AWR's impermissible denial of coverage under the terms and conditions of the Line Protection Agreements.

59.    Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation. Plaintiff and his counsel have no interests which are adverse to those belonging to the class that Plaintiff seeks to represent.

**a)    Rule 23(b)(1)**

60.    Class action status is warranted under Rule 23(b)(1)(A). Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the classes, which would establish incompatible standards of conduct for AWR.

61.    Class action status is also warranted under Rule 23(b)(1)(B). Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests

**b)    Rule 23(b)(2)**

62.    This action is appropriate as a class action pursuant to Rule 23(b)(2) as Plaintiff seeks injunctive relief for the class. AWR has acted in a manner generally applicable to each member of the class by implementing uniform practices and procedures designed to avoid or delay payment for covered repairs of external water and sewer lines.

63.    AWR's unlawful practices, if not enjoined, will subject Plaintiff and other class members to enormous continuing future harm and will cause irreparable injuries to line protection customers, who make monthly payments and rightly expect coverage under the terms and conditions of the Line Protection Agreements. The adverse financial impact of AWR's unlawful actions is continuing and, unless permanently enjoined, will continue to irreparably injure Plaintiff and class members.

**c)    Rule 23(b)(3)**

64.    This action is also appropriate as a class action pursuant to Rule 23(b)(3).

Common questions of law and fact predominate over any individualized questions. Common legal and factual questions include the following:

i.  Whether AWR designed and implemented practices and procedures intended to (i) deny claims for the payment of covered repairs as a matter of course; (ii) deflect its contractual violations through reliance on vague, inapplicable, or non-existent exclusions to coverage; (iii) avoid or minimize the inspection and diligence required by the Line Protection Agreements, and (iv) impose minimal and insufficient repairs even in instances where AWR has determined damage to exterior water and sewer lines is covered under the Line Protection Agreements;

ii.  Whether AWR violated the express terms of the Line Protection Agreements by improperly denying payment for repairs of exterior water and sewer resulting from "normal wear and usage;"

iii.  Whether AWR violated the NJCFA through misleading solicitations sent, ratified, or drafted by AWR and/or by implementing a pattern and practice of delaying or denying coverage under the Line Protection Agreements;

iv.  Whether AWR violated NYGBL § 349 through misleading solicitations sent, ratified, or drafted by AWR and/or by implementing a pattern and practice of delaying or denying coverage under the Line Protection Agreements; and

v.  Whether Plaintiff and the Class are entitled to permanent injunctive relief, and other damages caused by AWR's impermissible practices.

65.  The proposed class is defined by objective criteria so that it is administratively feasible for the Court to determine whether a particular individual is a member. Individual class members can be identified through reference to documents in AWR's possession, custody, or control without resort to a mini-hearing on the merits.

66.  A class action is superior to other available means for the fair and efficient adjudication of this controversy for other reasons as well. The injuries suffered by individual class members are, though important to them, relatively small compared to the burden and expense of individual prosecution needed to address AWR's misconduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class

action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

67.    Plaintiff cannot be certain of the form and manner of proposed notice to class members until the class is finally defined and discovery is completed regarding the identity of class members. Plaintiff anticipates, however, that notice by mail will be given to class members who can be identified specifically. In addition, notice may be published in appropriate publications, on the internet, in press releases and in similar communications in a way that is targeted to reach class members. The cost of notice, after class certification, trial, or settlement before trial, should be borne by AWR.

68.    Plaintiff reserves the right to modify or amend the definition of the proposed class at any time before the class is certified by the Court.

### FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

69.    Plaintiff re-alleges and incorporates the allegations made elsewhere in the complaint as if set forth fully herein.

70.    Plaintiff brings this claim on behalf of himself and on behalf of the class.

71.    The Line Protection Agreements are valid, enforceable contracts between Plaintiff and other class members and AWR.

72.    Plaintiff and the other class members have performed all their obligations under the terms and conditions of the Line Protection Agreements. At all relevant times, Plaintiff and other class members owned and occupied their homes, and had ownership responsibility over their exterior water and sewer lines. In addition, Plaintiff and other class members paid all costs

19

required by the terms and conditions of the Line Protection Agreements.

73.    As alleged above, AWR owed duties and obligations to Plaintiff and the other class members pursuant to the terms and conditions of the Line Protection Agreements, including dispatching independent contractors and paying for repairs to exterior water and sewer lines resulting from "normal wear and usage." AWR violated those duties and obligations by improperly denying coverage under the Line Protection and citing inapplicable, vague, or non-existent policy exclusions to shield its impermissible actions.

74.    AWR's conduct and material breaches of the Line Protection Agreements have proximately caused damage to Plaintiff and other class members in an amount to be determined at trial. At a minimum, Plaintiff and other class members are entitled to the return of the money they forfeited to participate in line protection programs and money paid out-of-pocket for covered repairs to exterior water and sewer lines.

75.    In addition, unless AWR is permanently enjoined from continuing its improper and unlawful practices, Plaintiff and other class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

### SECOND CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

76.    Plaintiff re-alleges and incorporates the allegations made elsewhere in the complaint as if set forth fully herein.

77.    Plaintiff brings this claim on behalf of himself and on behalf of the class.

78.    The Line Protection Agreements are valid, enforceable contracts between Plaintiff and other class members and AWR. Like every contract, the Line Protection Agreements contain a covenant of good faith and fair dealing through which AWR owed Plaintiff and other class

members a duty to act in good faith and in a manner that did not frustrate their reasonable expectations.

79.    Upon information and belief, AWR exercised its discretion under the Line Protection Agreements in bad faith and breached the implied covenant of good faith and fair dealing by, among other things:

a)    Denying claims for the payment of covered repairs as a matter of course;

b)    Deflecting its contractual violations through reliance on vague, inapplicable, or non-existent exclusions to coverage;

c)    Avoiding or minimizing the investigation, inspection, and diligence required by the Line Protection Agreements, and

d)    Imposing minimal and insufficient repairs even in instances where it determined damage to exterior water and sewer lines was covered under the Line Protection Agreements.

80.    AWR's breach of the implied covenant of good faith and fair dealing has proximately caused damage to Plaintiff and other class members in an amount to be determined at trial. At a minimum, Plaintiff and other class members are entitled to the return of the money they forfeited to participate in line protection programs and money paid out-of-pocket for covered repairs to exterior water and sewer lines.

81.    In addition, unless AWR is permanently enjoined from continuing their improper and unlawful practices, Plaintiff and other class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

82.    Plaintiff re-alleges and incorporates the allegations made elsewhere in the complaint as if set forth fully herein.

83.    Plaintiff brings this claim on behalf of himself and on behalf of the class.

84.    The NJCFA declares it to be an unlawful practice for "any person" to use an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise." N.J.S.A. 56:8-2.

85.    The legislature intended the NJCFA to be "one of the strongest consumer protection laws in the nation." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15, 647 A.2d 454, 460 (1994). The NJCFA is considered "remedial legislation," and courts therefore construe its prohibitions "liberally to accomplish its broad purpose of safeguarding the public." *Lee v. Carter-Reed Co.*, 203 N.J. 496, 522, 4 A.3d 561, 577 (2010)).

86.    The NJCFA broadly defines "person" to "include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association." N.J.S.A. 56:8-1(d). Here, AWR is a "person" under the NJCFA.

87.    The NJCFA broadly defines "merchandise" as "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c). Here, AWR offers line protection services constituting "merchandise" under the NJCFA.

88.    AWR engaged in unconscionable and deceptive or misleading commercial practices while advertising and providing line protection services to Plaintiff and other class members. AWR's promotional materials promised potential participants in the Line Protection

22

Program that they would receive: (1) protection for covered water and sewer line repairs caused by normal wear and usage; (2) attention to customer service; (3) rapid response in emergencies; (4) a 1-year warranty on all repairs; and (5) "peace of mind protection from unexpected repairs." *See* Exhibit A. Instead, it was AWR's pattern and practice to minimize or avoid investigating claims and paying for covered repairs under the Line Protection Agreements. Moreover, AWR avoided its contractual obligations by referencing inapplicable, vague, or non-existent exclusions.

89.     There is a causal relationship between AWR's unlawful conduct and line protection customers' losses. Plaintiff and other class members entered into Line Protection Agreements after receiving deceptive solicitation materials sent, drafted, or ratified by AWR. Plaintiff and other class members paid to participate in line protection programs that did not conform to AWR's representations, and also paid for covered repairs out-of-pocket after AWR denied coverage based on reference to inapplicable, vague, or non-existent exclusions.

90.     AWR's unconscionable commercial practices, along with its misrepresentations and omissions, make AWR liable to the Plaintiff and other class members under N.J.S.A. 56:8-2.11 and N.J.S.A. 56:8-2.12, which provides that "[a]ny person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared to be unlawful." Defendant is further liable to Plaintiff and other class members for treble damages, attorneys' fees, and costs under N.J.S.A. 56:8-19.

91.     In addition, unless AWR is permanently enjoined from continuing its improper and unlawful practices, Plaintiff and other class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349

92. Plaintiff re-alleges and incorporates the allegations made elsewhere in the Complaint as if set forth fully herein.

93. Plaintiff brings this claim in the alternative on behalf of himself and on behalf of the class.

94. NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349. The New York Court of Appeals has indicated that the statute should be liberally construed to provide "needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Karlin v. IVF America, Inc.*, 690 N.Y.S.2d 495, 498 (N.Y. 1999).

95. A violation of NYGBL § 349 occurs where: (1) the challenged transaction was "consumer-oriented;" (2) a defendant engaged in deceptive or materially misleading acts or practices likely to deceive a reasonable consumer acting reasonably under the circumstances; and (3) the plaintiff was injured by reason of the defendant's deceptive or misleading conduct.

96. The misconduct alleged in the Complaint was consumer-oriented. Beginning in 2013, AWR invited homeowners to participate in the Line Protection Program through promotional materials and solicitations either directly issued by AWR or ratified or drafted by AWR.

97. AWR engaged in deceptive or materially misleading acts or practices. AWR's promotional materials promised potential participants in the Line Protection Program that they would receive (1) "Unlimited protection for covered water and sewer line repairs caused by normal wear and usage;" (2) "attention to customer service;" (3) "Rapid Response in

24

emergencies;" (4) a "1-year warranty on all repairs;" and (5) "peace of mind protection from unexpected repairs." Exhibit A. Instead, it was AWR's pattern and practice to minimize or avoid investigating claims and paying for covered repairs under the Line Protection Agreements. Moreover, AWR avoided its contractual obligations by referencing inapplicable, vague, or non-existent exclusions. AWR's omissions, misrepresentations, and falsehoods constituted materially misleading acts or practices under NYGBL § 349.

98. AWR's violation of NYGBL § 349 has proximately caused damage to Plaintiff and other class members. Plaintiff and other class members paid to participate in line protection programs that did not conform to AWR's representations, and also paid for covered repairs out-of-pocket after AWR denied coverage based on reference to inapplicable, vague, or non-existent exclusions.

99. Thus, under NYGBL § 349(h), Plaintiff is entitled to recover his actual damages or fifty dollars, whichever is greater, along with reasonable attorneys' fees.

100. In addition, unless AWR is permanently enjoined from continuing its improper and unlawful practices, Plaintiff and other class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the class, prays for relief as follows:

   a) An Order certifying this action to proceed on behalf of the class and appointing Plaintiff and the counsel listed below to represent the class;

   b) An Order awarding Plaintiff and class members compensatory, actual, statutory, punitive or exemplary damages, restitution, and/or disgorgement along with such other equitable relief as the Court deems proper;

   c) An Order enjoining AWR, its representatives, and all others acting with it or on its behalf from unlawfully maintaining practices and procedures designed to avoid or minimize investigating and paying covered repairs under the terms and

conditions of the Line Protection Agreements;

d) An Order awarding Plaintiff attorneys' fees and other costs; and

e) An Order awarding such other and further relief as may be just and proper, including pre-judgment and post-judgment interest on the above amounts.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Plaintiff and the class demand a trial by jury.

Dated: June 18, 2018                      Respectfully submitted,

By:*/s/ Raymond N. Barto*                    .
　　　Raymond N. Barto
　　　Stephen J. Fearon, Jr. (subject to *pro hac vice*)
　　　Paul V. Sweeny (subject to *pro hac vice*)
　　　**SQUITIERI & FEARON, LLP**
　　　32 East 57th St., 12th Floor
　　　New York, New NY 10022
　　　Telephone: (212) 421-6492
　　　Facsimile: (212) 421-6553
　　　Email: stephen@sfclasslaw.com
　　　Email: paul@sfclasslaw.com

　　　**Attorneys for Plaintiff and the Proposed Class**