# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JOSEPH RABINOWITZ,
on behalf of himself and all
others similarly situated,

       Plaintiff,

    v.

AMERICAN WATER RESOURCES,
LLC,

       Defendant.

1:18-cv-10704-NLH-JS

**OPINION**

---

**APPEARANCES**:

OLIMPIO LEE SQUITIERI
SQUITIERI & FEARON, LLP
2600 KENNEDY BOULEVARD - SUITE 1K
JERSEY CITY, NJ 07306

RAYMOND NICHOLAS BARTO
STEPHEN J. FEARON, JR.
PAUL V. SWEENY
SQUIRIERI & FEARON LLP
32 EAST 57TH STREET
12TH FLOOR
NEW YORK, NY 10022

    *On behalf of Plaintiff*

MICHAEL P. DALY
DRINKER, BIDDLE & REATH, LLP
500 CAMPUS DRIVE
FLORHAM PARK, NJ 07932-1047

DANIEL ELLIOT BREWER
DRINKER BIDDLE & REATH
ONE LOGAN SQUARE
18TH & CHERRY STREETS
PHILADELPHIA, PA 19108

    *On behalf of Defendant*

**HILLMAN, District Judge**

This putative class action concerns claims by Plaintiff and all similarly situated individuals arising out of water and sewer line protection programs provided by Defendant. Pending before the Court is the motion of Defendant to dismiss Plaintiff's complaint and to strike certain allegations in the complaint. For the reasons expressed below, Defendant's motion will be denied.

## BACKGROUND[1]

Plaintiff, Joseph Rabinowitz, owns a home in Brooklyn, New York. In February 2013, Plaintiff enrolled in the water and sewer line protection programs offered by Defendant American Water Resources, LLC ("AWR"). AWR provides line protection services to more than 1.4 million consumers across the country. Plaintiff has paid approximately $150 a year for this protection.

In February 2018, Plaintiff contacted AWR concerning a sewer leak in his home. AWR claimed any damage to the sewer line inside of the home was not covered under the line protection agreements. Plaintiff then hired a plumber who, in order to repair the interior line, had to open the exterior wall

---

[1] Because Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b), the Court restates the facts alleged in Plaintiff's complaint, and accepts them as true for purposes of resolving Defendant's motion.

to find a good piece of pipe to make a new connection. In doing so he found that the exterior portion of the sewer line was broken, clogged, or blocked due to extensive rotting, erosion, cracking, and other damage. Plaintiff's plumber implemented temporary measures to keep the sewer line functioning pending a permanent solution.

From February to March 2018, Plaintiff repeatedly contacted AWR concerning repairs to his exterior sewer line, that is, the portion of the sewer line the line protection agreements oblige AWR to pay to repair. Despite its broad duty under the line protection agreements to dispatch an independent contractor to a home when there is a break, clog, or blockage of the sewer line, AWR refused to do so citing nonexistent exceptions, including that it would only dispatch an independent contractor where there is an active backup or where there is a crack to the bottom of the line (as opposed to the top). AWR also informed Plaintiff it would not dispatch an independent contractor to a home based on the recommendation of a third-party, even though the line protection agreements contain no provision to that effect.

AWR eventually dispatched an independent contractor to Plaintiff's home, but after the independent contractor inspected the sewer line, AWR denied Plaintiff's claim in late March 2018. AWR asserted that the repair was not covered because Plaintiff's

privately hired plumber had purportedly caused the damage even
though the substantial deterioration and cracking of the
exterior sewer line could not have been caused by Plaintiff or a
third-party.

Plaintiff claims that AWR violated its obligations under
the line protection agreements by delaying to dispatch an
independent contractor and ultimately denying Plaintiff's claim
for coverage of repairs to his exterior sewer line. The break,
clog, or blockage of Plaintiff's exterior sewer line occurred
after Plaintiff enrolled in the line protection programs and
resulted from normal wear and usage in the form of extensive
rot, erosion, cracking, and other damage. Plaintiff claims that
contrary to AWR's representations, that damage could not have
been caused by the one-time, temporary repair of the in-home
portion of Plaintiff's sewer line, and AWR was obligated to pay
for the cost of repairs. In his complaint, Plaintiff states
that his exterior sewer line remains broken, blocked, or
clogged, and he is currently considering various contractors to
undertake the costly repair that was wrongly denied by AWR.
Since he filed his complaint, Plaintiff has paid to have the
sewer line repaired.[2]

Plaintiff claims that just like his experience, AWR

---

[2] This update is discussed below.

regularly denies covered claims for the payment of repairs without cause and in violation of the terms and conditions of its line protection agreements. By violating its contractual duties, Plaintiff claims that AWR is able to enrich itself at the expense of line protection program participants who have dutifully paid their premiums and rightly expect coverage.

Plaintiff brings this action on behalf of himself and other similarly situated homeowners across the United States. Plaintiff alleges claims for (1) breach of contract; (2) a breach of the implied covenant of good faith and fair dealing; (3) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA"); and (4) New York General Business Law § 349 ("NYGBL § 349"). Plaintiff seeks permanent injunctive relief, as well as damages caused by AWR's practices.

AWR has moved to dismiss Plaintiff's complaint in its entirety. AWR argues that Plaintiff has not pleaded the necessary elements for a breach of contract claim. AWR also argues that Plaintiff cannot maintain a parallel breach of implied covenant of good faith and fair dealing if a valid contract governs the parties' relationship. AWR further argues that Plaintiff cannot transform this basic breach of contract case into one for fraud, and even if he could, his fraud claims are not properly pleaded and untimely, in addition to the fact that the NJCFA does not apply to Plaintiff, who is a citizen of

New York.  To the extent that any of Plaintiff's claims may proceed, AWR seeks to strike certain allegations in Plaintiff's complaint that AWR contends have no possible relation to the controversy and may either cause prejudice or confuse the issues.  Plaintiff has opposed AWR's motion.

## DISCUSSION

### A.    Subject Matter Jurisdiction

This Court has original jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  Minimal diversity exists between members of the class and Defendant: AWR is a citizen of Delaware and New Jersey,[3] and Plaintiff is a citizen of New York.  The amount in controversy in this action exceeds $5,000,000 and there are more than 100 members in the class.

### B.    AWR's Motion to Dismiss

#### 1.    *Standard for Motion to Dismiss*

---

[3] American Water Resources, LLC is a limited liability company. AWR's sole member is American Water Works Company, a publicly traded Delaware corporation, with its principal place of business located at 1025 Laurel Oak Road, Voorhees, New Jersey. Thus, AWR's state of citizenship is Delaware and New Jersey. See Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (explaining that the citizenship of an LLC is determined by the citizenship of each of its members, not where it has a principal place of business, or under which state's law it is established); 28 U.S.C. § 1332(c)(1) (providing that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do . . . ."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (alteration in original)
(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,
47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,
40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.
Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a
> court must take three steps.  First, the court must
> "tak[e] note of the elements a plaintiff must plead to
> state a claim."  Second, the court should identify
> allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of
> truth."  Third, "whe[n] there are well-pleaded factual

7

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider,

however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

### 2.  *Analysis*

AWR argues that Plaintiff has not pleaded sufficiently any of his claims in a manner that satisfies the Twombly/Iqbal standard and the Rule 8(a) and 9(b) pleading requirements. AWR argues that Plaintiff's breach of contract claim does not allege a contractual provision AWR allegedly breached, show that he has suffered any damages, or connect the breach to any damages. For Plaintiff's claim of the breach of the implied duty of good faith and fair dealing, AWR argues that it fails because Plaintiff does not allege any facts that differentiate his breach-of-duty claim from his breach-of-contract claim; he does not allege any facts that suggest that AWR acted in anything other than good faith; and he does not allege any facts that suggest that a supposed breach caused any harm. As for Plaintiff's fraud-based claims, AWR argues that the NJCFA cannot apply to a New York citizen and otherwise fails to show any

9

deceptive practice or ascertainable loss. AWR also argues that
Plaintiff's NYGBL claim is untimely and otherwise fails to plead
the necessary elements that the challenged act or practice was
consumer-oriented; the conduct was materially deceptive or
misleading; and he suffered harm as a result of AWR's act.

The Court finds that AWR takes an overly myopic view of
Plaintiff's case. Plaintiff's claims against AWR boil down to
this: Plaintiff purchased sewer and water line protection plans
from AWR, and the parties' obligations are defined by the line
protection plan agreements. Plaintiff fulfilled his obligations
under the agreement by paying his premiums, but AWR failed to
fulfill its obligation to provide and pay for the services
covered by the agreement – i.e., repair of a sewer damaged by
normal wear and usage. Plaintiff was therefore forced under his
view of the facts to hire his own plumber to diagnose and
temporarily stem the leak while Plaintiff attempted to
communicate with AWR in order avail himself of the benefits of
his line protection plan.[4]

---

[4] After Plaintiff filed his complaint in June 2018, Plaintiff
indicates in his opposition brief that he ultimately paid to
have the sewer line repaired in July 2018. AWR argues that
because this alleged damage is not pleaded in his complaint,
Plaintiff cannot use that payment to support the damages element
for his claims. Technically AWR is correct, but the Court does
not find this issue dispositive to the viability of Plaintiff's
claims because Plaintiff's complaint sufficiently pleads his
damages even without the precise expense of paying for the final
sewer line repair.

The gravamen of Plaintiff's complaint is that based on his own experience and complaints by many other customers, Plaintiff's experience not only constitutes a breach of contract, but also evidences AWR's bad faith and fraudulent consumer practices because it markets and receives payment for sewer and water line protection that it has no intention of providing, even when the repair fits squarely in the terms of the line protection plan agreements. Even this boiled-down version of Plaintiff's detailed complaint readily meets the pleading requirements for all of his alleged claims.

### a.   Breach of Contract

Under New York law,[5] the essential elements of a breach of contract cause of action are "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."  Victory State Bank v. EMBA Hylan, LLC, --- N.Y.S.3d ----, 2019 WL 692982, at *2 (N.Y.A.D. 2 Dept., Feb. 20, 2019) (quoting Canzona v Atanasio, 989 N.Y.S.2d 44, 47 (N.Y.A.D. 2 Dept. 2014)) (quotations and other citation omitted).  Here, Plaintiff pleads that he and AWR entered into a sewer line protection plan agreement; Plaintiff was obligated to

---

[5] The line protection plan agreements between Plaintiff and AWR provide that New York law governs any disputes arising from the agreements.

pay certain premiums, which he did; AWR was obligated to provide and pay for sewer line repair service due to sewer line damage resulting from normal wear, which occurred to Plaintiff's sewer line; and AWR failed to provide and pay for that service; which resulted in Plaintiff paying premiums for no protection and incurring expenses to hire his own plumber. These allegations state a valid breach of contract claim.

### b. Breach of the duty of good faith and fair dealing

"[T]he duty of good faith and fair dealing between the parties to a contract is well recognized" under New York law. Sauer v. Xerox Corp., 95 F. Supp. 2d 125, 131 (W.D.N.Y. 2000) (citing Mark Patterson, Inc. v. Bowie, 237 A.D.2d 184, 186, 654 N.Y.S.2d 769 (1st Dep't 1997) (citing New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) ("[I]mplicit in every contract is a covenant of good faith and fair dealing")). New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing, however, when a breach of contract claim, based upon the same facts, is also pled. Doyle v. Mastercard International Incorporated, 700 F. App'x 22, 24 (2d Cir. 2017) (quoting Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)) (quotations and other citation omitted). But a plaintiff "may state a claim for the

breach of an implied covenant of good faith where the defendant engages in conduct that while technically not constituting a breach of contract, nevertheless deprives the plaintiff of the benefit of its bargain." Konecranes, Inc. v. Cranetech, Inc., 2005 WL 246916, at *3 (W.D.N.Y. 2005) (citing Sauer v. Xerox Corp., 95 F. Supp. 2d 125, 132 (W.D.N.Y. 2000) (quoting Fourth Branch Associates Mechanicville v. Niagara Mohawk Power Corp., 235 A.D.2d 962, 965, 653 N.Y.S.2d 412 (3d Dep't 1997)) (other citations omitted).

In this case, Plaintiff has asserted claims that are additional to and go beyond the contractual quid pro quo. Plaintiff alleges that AWR had an implied obligation under their agreement to conduct a good-faith investigation of the damage to Plaintiff's sewer line, but AWR delayed and avoided its obligation to investigate, and denied his claim by relying on an inapplicable exclusion. This allegation is sufficiently distinct from Plaintiff's breach of contract claim so that it may proceed. See, e.g., Konecranes, 2005 WL 246916 at *3 ("The confidentiality agreement between the defendants and the plaintiff prohibited defendants only from disclosing information: it did not specifically prohibit defendants from taking information from the facility. Accordingly, a reasonable finder of fact could determine that while the mere taking of documents did not violate the confidentiality agreement, that

act violated the spirit of the agreement, and therefore violated

an implied covenant of good faith and fair dealing.").

### c. Consumer fraud claims

Plaintiff has asserted claims under the New York General

Business Law § 349[6] and the New Jersey Consumer Fraud Act, both

of which concern deceptive business practices.[7]  "The capacity to

---

[6] AWR argues that Plaintiff's NYGBL § 349 claim accrued in
February 2013 when he signed up for the sewer and water line
protection plans, which makes his June 2018 NYGBL § 349 claim
untimely by two years based on the law's three-year statute of
limitations.  A claim under NYGBL § 349 first accrues "when
plaintiff has been injured by a deceptive act or practice
violating section 349." Argabright v. Rheem Manufacturing
Company, 201 F. Supp. 3d 578, 612 (D.N.J. 2016) (citing Gaidon
v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 704 N.Y.S.2d
177, 725 N.E.2d 598, 604 (1999)).  There is no basis to conclude
that Plaintiff suffered an injury until Defendant allegedly
failed to recognize or evaluate his claim in February 2018.
Although Plaintiff purchased the line protection plans many
years earlier and paying premiums along the way, it was not
until that date that he had reason to learn that AWR would deny
him services and had been engaging in allegedly deceptive
business practices.  Plaintiff's NYGBL § 349 claim therefore did
not accrue until February 2018 and his June 2018 complaint is
timely.

[7] New Jersey is the "forum state" for the instant litigation, and
the Court "must apply the law of the forum state, including its
choice of law rules." Harper v. LG Electronics USA, Inc., 595
F. Supp. 2d 486, 489 (D.N.J. 2009) (citations omitted).  "'Each
choice-of-law case presents its own unique combination of facts—
the parties' residence, the place and type of occurrence and the
specific set of governmental interest—that influence the
resolution of the choice-of-law issue presented.'" Harper v. LG
Electronics USA, Inc., 595 F. Supp. 2d 486, 490 (D.N.J. 2009)
(quoting Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007)).
In a multistate class action lawsuit, a choice of law analysis
must be conducted before the class is certified to determine
which state's law should apply to the class.  Argabright v.
Rheem Manufacturing Company, 201 F. Supp. 3d 578, 591 (D.N.J.

mislead is the prime ingredient of all types of consumer fraud."

Argabright v. Rheem Manufacturing Company, 201 F. Supp. 3d 578,

605–06 (D.N.J. 2016) (quotations and citations omitted)

(discussing the NYGBL § 349 and NJCFA). "False promises,

misrepresentations, and concealment or omission of material

facts all constitute deceptive practices under these statutes.

But importantly, unlike the common law claim of fraudulent

concealment, a defendant's knowledge or belief of the falsity of

a statement, or intent to deceive, are not required to establish

a violation under the New Jersey [or] New York . . . consumer

fraud statutes." Id. (citations omitted).

"A successful GBL § 349 claim requires that a plaintiff

prove, by a preponderance of the evidence, that (1) the

defendant has engaged in an act or practice that is deceptive or

---

2016) (citing In re LifeUSA Holding Inc., 242 F.3d 136, 147 n.11
(3d Cir. 2001)). AWR contends that a nationwide class cannot be
certified because of the differences in the states' laws, but in
any event, AWR argues that the NJCFA is inapplicable to
Plaintiff's claims against it because he is not a New Jersey
citizen. Plaintiff argues that AWR is a citizen of New Jersey,
and it should be held to the NJCFA's proscriptions against
deceptive business practices. Plaintiff also argues that, at a
minimum, the choice-of-law issue should be determined after
discovery. Because the choice of law analysis "is generally a
very fact-intensive inquiry and the factual record is not full
enough to make a choice of law determination," id., the choice
of law analysis as to whether the NJCFA applies must be
postponed to a later stage, see, e.g., id. (explaining that in a
putative nationwide class action concerning the NJCFA and NYGBL,
among other laws, the choice of law analysis was better left to
a future stage of the case).

misleading in a material way; (2) the plaintiff has been injured by reason thereof; and (3) the deceptive act or practice is consumer oriented." Koch v. Greenberg, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) (quoting Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 343–44, 704 N.Y.S.2d 177, 725 N.E.2d 598 (Ct. App. 1999)) (quotations and citations omitted). "In contrast to private contract disputes, unique to the parties, consumer-oriented conduct within the meaning of the statute requires acts or practices that have a broader impact on consumers at large." Id. (citation omitted). "Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior," and as long as conduct was aimed at the public at large, it is immaterial that the defendant may not have "committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers." Id. (citation omitted). Where the "acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met." Id. (quotations and citations omitted).

The NJCFA was passed to address "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." Chaudhri v. Lumileds LLC, 2018 WL 6322623, at *6 (D.N.J. 2018) (quoting Daaleman v. Elizabethtown

Gas Co., 77 N.J. 267, 271 (1978)).  As "remedial legislation,"
the NJCFA "should be construed liberally."  Id. (quoting Int'l
Union of Operating Engineers Local No. 68 Welfare Fund v. Merck
& Co., 192 N.J. 372, 377 n.1 (2007)).  To establish a prima
facie case under the NJCFA, "a plaintiff must allege (1)
unlawful conduct by the defendant, (2) an ascertainable loss by
plaintiff; and (3) a causal connection between the defendant's
unlawful practice and the plaintiff's ascertainable loss."
Angelo v. Fidelity & Guaranty Life Insurance Company, 2019 WL
330521, at *5 (D.N.J. 2019) (quoting MZL Capital Holdings, Inc.
v. TD Bank, N.A., 734 F. App'x 101, 104 (3d Cir. 2018) (citing
Zaman v. Felton, 98 A.3d 503, 516 (N.J. 2014)).

Unlawful conduct falls into three general categories:
affirmative acts, knowing omissions, and violation of
regulations.  Chaudhri, 2018 WL 6322623 at *6 (citing N.J.S.A.
56:8-2, 56:8-4).  An affirmative misrepresentation under the
NJCFA is "one which is material to the transaction and which is
a statement of fact, found to be false, made to induce the buyer
to make the purchase."  Id.  (citation omitted).  "Unlike common
law fraud, the NJCFA does not require proof of reliance."  Id.
(quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 606 (3d
Cir. 2012)).

Plaintiff's allegations in support of his NYGBL and NJCFA
claims are essentially the same.  Plaintiff alleges that AWR's

17

promotional materials promised potential participants in the line protection programs that they would receive: (1) protection for covered water and sewer line repairs caused by normal wear and usage; (2) attention to customer service; (3) rapid response in emergencies; (4) a 1-year warranty on all repairs; and (5) "peace of mind protection from unexpected repairs." Plaintiff alleges that instead it was AWR's pattern and practice to minimize or avoid investigating claims and paying for covered repairs under the line protection agreements.

Plaintiff claims that he and other class members entered into line protection agreements after receiving deceptive solicitation materials sent, drafted, or ratified by AWR, they paid to participate in line protection programs that did not conform to AWR's representations, and they also paid for covered repairs out-of-pocket after AWR denied coverage based on reference to inapplicable, vague, or non-existent exclusions. Plaintiff supports these allegations based on his own experience as well as the complaints made by others, some of which are detailed in the complaint.

Although AWR contends that Plaintiff's deceptive business practice claims are substantively baseless, Plaintiff's allegations, when accepted as true, readily satisfy the required

pleading standards for his NYGBL § 349 and NJCFA claims.[8]  Aside

from Plaintiff citing to a "smoking gun" admission on the part

of AWR, the Court questions what more Plaintiff can allege at

this stage as to AWR's alleged practice of avoiding the

investigation and payment of covered repairs under the line

protection agreements for which Plaintiff and others have paid

monthly premiums for months and years.  See, e.g., Burroughs v.

PHH Mortgage Corporation, 2016 WL 1389934 at *4 (D.N.J. 2016)

("The party who has defrauded another cannot use the success of

that fraud as a sword to defeat the victim's claims against

it."); Rowen Petroleum Properties, LLC v. Hollywood Tanning

Systems, Inc., 2009 WL 1085737 at *6 (D.N.J. 2009) ("[T]he

failure of plaintiff to be more specific with regard to the

defendants' individual conduct is not fatal to the claims at

this motion to dismiss stage, since it is only the defendants

themselves who possess the knowledge of the alleged bait and

switch."); Craftmatic Securities Litigation v. Kraftsow, 890

F.2d 628, 645 (3d Cir. 1989) ("Particularly in cases of

corporate fraud, plaintiffs cannot be expected to have personal

---

[8] Claims under NYGBL § 349 are not subject to the pleading-with-
particularity requirements of Rule 9(b), Greene v. Gerber
Products Co., 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017), but the
heightened pleading standard set forth in Rule 9(b) applies to
NJCFA claims, In Re Insulin Pricing Litigation, 2019 WL 643709,
at *14 (D.N.J. 2019) (citing Dewey v. Volkswagen, 558 F. Supp.
2d 505, 524 (D.N.J. 2008)).  Plaintiff's allegations meet both
the Rule 8(a) and Rule 9(b) standards.

knowledge of the details of corporate internal affairs.  Thus,
courts have relaxed the rule when factual information is
peculiarly within the defendant's knowledge or control.");
Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992)
(explaining that Rule 9(b) has stringent pleading requirements,
but "the courts should be 'sensitive' to the fact that
application of the Rule prior to discovery 'may permit
sophisticated defrauders to successfully conceal the details of
their fraud'" (citation omitted)).  Plaintiff's NYGBL § 349 and
NJCFA claims will not be dismissed at this motion to dismiss
stage.

### 3. AWR's Rule 12(f) Motion to Strike

AWR seeks to strike certain allegations in Plaintiff's
complaint: (1) Paragraph 32, which alleges that AWR "avoid[s]
using the word 'insurance'" in its Service Line Protection
Programs in order to "evade insurance regulations" or "oversight
by state insurance regulators"; (2) Paragraphs 41 through 49,
which reference customer-service complaints; and (3) Paragraphs
50 through 55, which relate to an entirely different company,
specifically "Connecticut-based HomeServe USA."

Federal Civil Procedure Rule 12(f) provides, "The court may
strike from a pleading an insufficient defense or any redundant,
immaterial, impertinent, or scandalous matter."  "'A Rule 12(f)
motion is not meant to determine unclear or disputed questions

20

of law.'"  Small v. Warren, 2018 WL 6322438 at *2 (D.N.J. 2018)

(quoting FDIC v. Modular Homes, Inc., 859 F. Supp. 117, 120

(D.N.J. 1994)) (other citations omitted).  "[E]ven where the

challenged material is redundant, immaterial, impertinent, or

scandalous, a motion to strike should not be granted unless the

presence of the surplusage will prejudice the adverse party.'"

Newborn Bros. Co., Inc. v. Albion Engineering Co., 299 F.R.D.

90, 94 (D.N.J. 2014) (citing 5C Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure, § 1381 (3d ed. 2004)

(explaining that "even when technically appropriate and well-

founded, Rule 12(f) motions often are not granted in the absence

of a showing of prejudice to the moving party.") (other

citations omitted).  A court's determination on a "motion to

strike under Rule 12(f) is discretionary."  Id.

The Court does not find that the paragraphs in Plaintiff's

complaint cited by AWR should be stricken.  In the context those

allegations are pleaded, the allegations are relevant to

Plaintiff's claims.  The allegation that the line protection

plans are not "insurance" is relevant to AWR's ability to

administer the line protection plans outside of the constraints

of that specific regulatory oversight regime.  The other

customer complaints are relevant to Plaintiff's claims regarding

deceptive practices directed at consumers.  The allegations

regarding the competitor of AWR are relevant as a point of

comparison to AWR's alleged practices.  Although AWR might not care for these allegations, and refutes Plaintiff's characterization of those facts, nothing about them is redundant, immaterial, impertinent, or scandalous.  Paragraph 32, Paragraphs 41 through 49, and Paragraphs 50 through 55 will not be stricken from Plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, all of Plaintiff's claims and allegations survive AWR's motion to dismiss and strike. Plaintiff will now have the task, at the appropriate time, of proving his allegations and eventually establishing the propriety of class certification.[9]

An appropriate Order will be entered.

Date: __March 25, 2019__                   ___s/ Noel L. Hillman___
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[9] AWR points out that Plaintiff's proposed class definition - "All AWR line protection customers in the United States" - encompasses customers outside of New York City, and many of those customers are parties to binding arbitration agreements. AWR argues that because those customers agreed to pursue claims in individual arbitration rather than in collective litigation, a class cannot be defined in a way that would include them. That is an issue for the Court to determine at a future time.